UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. **4:22CR678 SEP(SPM)** ) |
| DESHAWN EDWARDS-2, | ) ) |
| Defendant. | ) ) |

**REPORT AND RECOMMENDATION AND**
**MEMORANDUM OPINION OF UNITED STATES MAGISTRATE JUDGE**

All pretrial matters in this case were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C.§636(b). Currently before this Court is Defendant Deshawn Edwards' Motion to Suppress Statements. ECF No. 76. For the reasons stated in below, Edwards' motion to suppress lacks merit and should be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

On December 1, 2022, a federal grand jury returned an indictment charging Deshawn Edwards with being a convicted felon in possession of a firearm on April 21, 2022, in violation of 18 U.S.C. §922(g). ECF No. 2. Edwards was arrested and arraigned on August 25, 2023. On April 11, 2024, Edwards filed the instant motion to suppress in accordance with this Court's Order Concerning Pretrial Motions. In the motion, Edwards asserts statements he made to Detectives Ryan Hanson and

1

Thomas Keener after he was taken into custody on April 11, 2021, were taken in violation of his Fifth Amendment rights. ECF No. 76, at p. 1.

On May 9, 2024, the United States filed its response opposing the motion denying that the officers violated Edwards' constitutional rights. ECF No. 80. On June 27, 2024, the undersigned held an evidentiary hearing on Edwards' motion to suppress. The United States presented the testimony of Detectives Ryan Hanson and Thomas Keener. Except for the testimony of the officers on cross-examination, Edwards offered no witnesses or other evidence. At the close of the hearing, counsel for both parties made arguments to the Court. After carefully considering the evidence presented and the applicable law, the undersigned makes the following findings of facts and conclusions of law.

## I.  Factual Findings

The following factual findings are based upon the testimony of Detectives Hanson and Keener at the evidentiary hearing, which I found to be credible.

On the afternoon of April 21, 2022, members of the St. Louis County Police Department ("SLCPD") Anti-Gang Unit, including Detectives Ryan Hanson and Thomas Keener, were patrolling the Lewis and Clark Boulevard area within the Eastern District of Missouri. The SLCPD Anti-Gang Unit was tasked with identifying vehicles that were used in serious crimes such as homicides, carjackings, robberies, stolen vehicles, etc. as well as investigating erratic or

dangerous driving. Although the officers were in separate police vehicles, the unit communicated with each other and with the Regional Intelligence Information Center over the same radio channel. Although some members of the tactical operations within the unit were wearing body cameras, in April 2022, not all officers wore or were required to wear body cameras.

Around 2:50 p.m., a detective in the unit announced over the radio that he had seen a white Chevy Cruze traveling approximately 70 miles per hour in a 45 mile-per-hour zone. The Chevy was reportedly weaving in and out of traffic and used a turn lane to get around other cars traveling south on Lewis and Clark. A detective with the unit activated his emergency lights and sirens and attempted to conduct a traffic stop of the Chevy but the car did not stop. The officers were then authorized to deploy spike strips so Detective Hanson, who was south of the location in the direction the Chevy was headed, deployed spike strips, flattening multiple tires on the Chevy. The Chevy still did not stop. A police air assist unit kept visual contact with the Chevy and announced over the police radio that the Chevy had entered Halls Ferry Circle and was continuing southbound on Riverview/Route 367. The route was uphill and as the Chevy attempted to go uphill its tires were deflated completely and lost traction. When the driver was unable to get the car to continue driving, both the passenger and the driver of Chevy bailed on foot and started running.

Detective Hanson arrived at the location of the Chevy just in time to see the driver bail from the car and run away on foot. Detective Hanson chased him. After a short pursuit, Detective Hanson apprehended the driver and took him into custody. A different officer chased and apprehended the passenger. Detective Keener arrived just as the passenger was being apprehended and took the passenger—identified in court as Edwards by both officers—into custody. Once the driver and passenger were both in police custody Detective Hanson went back to the Chevy to conduct an inventory search prior to having it towed. As he approached the Chevy he could see through the window of the car two firearms on the driver's-side floorboard and passenger-side floorboard sticking out from under each seat. After apprehending Edwards, Detective Keener conducted a pat down search and found narcotics on Edwards' person. Edwards was placed under arrest for resisting arrest and possession of a controlled substance. He was interviewed, while handcuffed, in a police vehicle by Detective Hanson in the presence of Detective Keener.

Before interviewing Edwards, Detective Hanson, a thirteen-year veteran of the SLCPD, advised Edwards of his *Miranda* rights. Detective Hanson asked Edwards if he understood his rights and Edwards affirmed that he did. After acknowledging that he understood his rights, Edwards made incriminating statements to Detectives Hanson and Keener including acknowledging that he had

4

narcotics on his person and suggesting the driver knew there were guns and drugs in the car. At the time Edwards made these statements to police he appeared to be calm and cooperative, he made no complaints about his health condition, and he did not appear to the officers to be under any distress or under any physical or mental impairment.

## II.    CONCLUSIONS OF LAW

Under the Fifth Amendment, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. In *Miranda v. Arizona*, 384 U.S. 436, 448-450, 455 (1966), the Supreme Court recognized that custodial interrogations have the potential to undermine the privilege conferred by the Fifth Amendment against self-incrimination by possibly exposing a suspect to physical or psychological coercion. To guard against such coercion, the Court established a prophylactic procedural mechanism that requires a suspect to receive a warning before any custodial interrogation begins. *Id.* at 444. Unless suspects are warned of their Fifth Amendment rights, any pretrial statements elicited from them are inadmissible at trial. *Id.* at 492. The protections set forth by the United States Supreme Court in *Miranda* are triggered only when a defendant is both in custody and being interrogated. *United States v. Hatten*, 68 F.3d 257, 261 (8th Cir. 1995). There is no dispute in this case that Edwards' *Miranda* protections were triggered when he was placed under arrest for resisting

arrest and then questioned about drugs found on his person while he was handcuffed inside a police vehicle.

However, in seeking a suppression order, Edwards argues there is no credible evidence that he was advised of his *Miranda* rights or that he voluntarily waived his *Miranda* rights. It is well-established that the privilege against self-incrimination can be waived. *Maryland v. Shatzer*, 559 U.S. 98, 104 (2010). To establish a valid waiver, the Government must demonstrate by a preponderance of the evidence that "the waiver was knowing, intelligent, and voluntary[.]" *Id.* The standard for determining the voluntariness of either a waiver of *Miranda* rights and/or a statement is the same. *Colorado v. Connelly,* 479 U.S. 157, 169-70 (1986). "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *United States v. Boslau,* 632 F.3d 422, 428 (8th Cir. 2011) (quoting *United States v. LeBrun,* 363 F.3d 715, 724 (8th Cir. 2004)). This determination must be made by looking at the totality of the circumstances, including both "the conduct of the officers and the characteristics of the accused." *LeBrun*, 363 F.3d at 724. Factors include, among other things, "the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." *Boslau*, 632 F.3d at 428 (quoting *Sheets v. Butera,* 389 F.3d 772, 779

(8th Cir. 2004)).

Although "[t]he government bears the burden of persuasion and must prove by a preponderance of the evidence that the challenged statements were voluntary," *LeBrun,* 363 F.3d at 724, "[c]ases in which a defendant can make a colorable argument that a self- incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare." *Berkemer v. McCarty,* 468 U.S. 420, 423 (1984). "The fact that such warnings were given weighs in favor of a voluntariness finding." *United States v. Mendoza,* 85 F.3d 1347, 1350 (8th Cir. 1996).

Notwithstanding Edwards' arguments to the contrary, the evidence of record establishes that Edwards made incriminating statements only after Detective Hanson advised him of his *Miranda* rights and after Edwards acknowledged that he understood his rights.[1] There is no credible evidence to suggest that Edwards' post-*Miranda* statements were involuntary or coerced. The evidence demonstrates that Detective Hanson advised Edwards of his *Miranda* rights in the presence of Detective Keener. Edwards acknowledged that he understood his rights by stating

---

[1] The undersigned rejects Edwards' argument that the testimony of Detectives Hanson and Keener about their interactions with Edwards should be deemed not credible because those interactions were not recorded and because "no record exists of Mr. Edwards being informed of his 5th Amendment Miranda rights." ECF No. 76, at p. 9. Both detectives credibly testified that, at the time of Edwards' arrest, it was not department policy for their unit to wear body-worn cameras. Based on the hearing testimony, the detectives were acting in compliance with procedures that were in place at the time of Edwards' arrest.

so verbally. Both officers testified, credibly, that based on their interactions with Edwards he appeared to be calm and cooperative, appeared to understand his rights, and did not appear to be in any duress or suffering under any impairment. It appears Edwards was cooperative and, in short order, made incriminating statements to the detectives. In sum, based on the totality of the circumstances, there is no evidence to suggest the police used tactics to "overbear the defendant's will and critically impair his capacity for self-determination." *Boslau,* 632 F.3d at 428.

For all the foregoing reasons, Edwards' motion to suppress statements should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED**, that Defendant DeShawn Edwards' Motion to Suppress Statements (ECF No. 76) be **DENIED**.

The parties are advised that they have fourteen (14) days in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact. *Thompson v. Nix,* 897 F.2d 356, 357 (8th Cir. 1990).

Trial in this case will be set before the Honorable Sarah E. Pitlyk, by separate order.

Dated: August 9, 2024

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE